# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

JOHNNY REININGER, JR,       )
                                    )
                    Plaintiff,      )
         v.                       ) Case No. CIV-16-1241-SLP
                                      )
STATE OF OKLAHOMA, *et al.*,   )
                                    )
               Defendants.    )

# BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
# FOR REASONABLE ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………...ii

INTRODUCTION…………………………………………………………………...1

PROCEDURAL HISTORY…………………………………………………...…...2

ARGUMENT………………………………………………………...…………..5

    I.      Reininger Is the Prevailing Party…………………………………6

    II.     Application of the Lodestar……………………………...………...7

          A. Reininger Has Made a Reasonable Request for Attorneys' Fees….…...8

s         B. Reininger's Counsel Seek Reasonable Hourly Rates…………………..9

          C. The Record and Case Law Support Reininger's Attorneys' Hourly Rates……………………………………………...…16

          D. Reininger's Counsel's Time Is Reasonable…………………………...19

          E. An Enhancement Is Warranted To Ensure that the Fee Award Is Reasonable…………………………………………………23

    III.    Reininger Is Entitled to Costs……………………………………..25

    IV.    Conclusion………………………………………………...25

i

# TABLE OF AUTHORITIES

**Cases**

*Argenyi v. Creighton Univ.*,
  703 F.3d 441 (8th Cir. 2013) ……………………….……………………………13

*Blum v. Stenson*,
  465 U.S. 886 (1984)…………………………………………………………….7

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't. of Health and Human Res.*,
  532 U.S. 598 (2001) …………………………………………………………6

*Catholic Bens. Ass'n LCA v. Azar*,
  Case Nos. CIV-14-240-R, CIV-14-685-R,
  2018 U.S. Dist. LEXIS 139058 (W.D. Okla. Aug. 15, 2018)………………....18

*Enos v. State of Arizona, et al.*,
  No. CV-16-00384-PHX-JJT, 2017 U.S. Dist. LEXIS 19268
  (D. Ariz. Feb. 10, 2017)…………………………………………………..13

*Featherstone v. Pacific Northwest Univ.*,
  No. 1:CV-14-3084-SMJ, 2014 U.S. Dist. LEXIS 102713
  (E.D. Wa. July 22, 2014)…………………………………………………………13

*Feldman v. Pro-Football, Inc.*,
  806 F. Supp. 2d 845 (D. Md. 2011)…………………………………………....11

*Fox v. Vice*,
  563 U.S. 826 (2011)…………………………………………………………..6

*Germano v. Int'l Profit Ass'n*,
  544 F.3d 798 (7th Cir. 2008)…………………………….……………………13

*Gudenkauf v. Stauffer Communs.*,
  158 F.3d 1074 (10th Cir. 1998)…………………………………………………6

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)………………………………………………………..5, 6, 7, 8

*Mkt. Ctr. East Retail Prop. v. Lurie*,
  730 F.3d 1239 (10th Cir. 2013)……………………………..…………………23

*Missouri v. Jenkins*,
    491 U.S. 274 (1989).…………………………………………………………7

*Mosier v. Kentucky*,
    675 F. Supp. 2d 693 (E.D. Ky. 2009).……………………………………..14

*Prakel v. State of Indiana*,
    100 F. Supp. 3d 661 (S.D. Ind. 2015).……………………………………..14

*Praseuth v. Rubbermaid, Inc.*,
    406 F.3d 1245 (10th Cir. 2005).……………………………………………6

*Perdue v. Kenny A.*,
    559 U.S. 542 (2010).………………………………………………5, 6, 23

*Ramos v. Lamm*,
    713 F.2d 546 (10th Cir. 1983).…………………………………………..23, 24

*Tabb v. Mentor Prot. Serv. LLC*,
    Case No. CIV-17-1130-D, 2018 U.S. Dist. LEXIS 181333
    (W.D. Okla. Oct. 23, 2018).…………………………………………………17

**Statutes**

29 U.S.C. § 794.……………………………………………………………1, 5

29 U.S.C. § 794a(b).……………………………………..…………...5, 6, 25

42 U.S.C. § 12101 *et seq*.……………………………………………………1, 5

42 U.S.C. § 12205.………………………………………………………5, 6, 25

I.      **Introduction**

The United States Constitution guarantees citizens of each state a republican form of government attendant with a panoply of rights including the right to petition the government and the right to vote.  This republican form of government depends on educated voters who are able to track their representatives.  These issues fundamental to civic participation were at the heart of this litigation—litigation that has resulted in the doors to public proceedings being thrown open to citizens who are deaf.

The plaintiff, Johnny Reininger, is a deaf individual who wishes to actively participate in the political process but was not able to follow legislative proceedings and track debates on bills on issues important to him.  He was not able to understand legislative proceedings and was denied the meaningful opportunity to petition his representatives and hold them accountable at the ballot box.  He brought this lawsuit to require the Oklahoma legislature to make legislative proceedings accessible to deaf individuals so that they have a meaningful opportunity to participate in the political process as concerned citizens and voters, as required by the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794.

Reininger brought this lawsuit against the State of Oklahoma, the Oklahoma House of Representatives, and the Speaker of the House (collectively, "the House Defendants"), only after repeatedly requesting that the House Defendants caption the legislative proceedings streamed online and the House Defendants refused to provide captioning.  The House Defendants, rather than immediately make its legislative

proceedings streamed online fully accessible to Reininger, chose to litigate this matter, filing a motion to dismiss and forcing Reininger to engage in significant discovery.[1]

In January 2019, after more than two years of litigation, the House Defendants made a Rule 68 offer of judgment agreeing to allow judgment to be entered against them. The House Defendants admitted that Reininger is a prevailing party and, as such is entitled to an award of reasonable attorney's fees and costs.  *See* [Doc. No. 91-1]. Reininger accepted the offer and this Court entered judgment in his favor.  [Doc. No. 93].

For the reasons stated in this memorandum, Reininger requests reasonable attorneys' fees in the amount of $94,053.12.  This request is based on the lodestar of $75,242.50 and a multiplier of 1.25 necessary to ensure that the amount in attorneys' fees is reasonable.  Plaintiff also requests reasonable costs in the amount of $1,059.10.

## II.     Procedural History

Reininger filed this lawsuit in October 2016 alleging that the House Defendants discriminated against him on the basis of disability in violation of Title II and section 504 by refusing to caption legislative proceedings streamed online.  [Doc. No. 1].

Reininger filed this lawsuit only after numerous attempts to contact the House Defendants to request captioning.  The House Defendants told him that they would not

---

[1] Reininger also brought suit against the Oklahoma State Senate and the Senate Pro Tempore (collectively, the "Senate Defendants").  That portion of the case settled. Accordingly, Reininger's fee petition is only in regard to the House Defendants, only seeks fees and costs attributable to the House Defendants.

caption the legislative proceedings, leaving him with no way to access the streamed legislative information that is accessible to members of the public.  *See id.*

After Reininger filed suit, the defendants moved to dismiss, asserting sovereign immunity pursuant to the Eleventh Amendment and violations of the Tenth Amendment's prohibition on commandeering.  The Eleventh Amendment argument raised the issue of first impression whether Title II validly abrogated sovereign immunity in the context of captioning of legislative proceedings.  [Doc. No. 26].

Judge DeGiusti denied the motion to dismiss, holding that this case concerned the fundamental right to participate in the democratic process.  [Doc. No. 40].  This Court stated that the important issue at stake was "a citizen's right to participate in the political process and to have meaningful access to the tools necessary to such participation."  *Id.* at 8.  The Court explained that "[i]f a citizen is denied access to information about the legislative positions of his or her representatives, the citizen's ability to adequately petition the government and participate in the political process is severely impaired."  *Id.* at 9.  For these reasons, the Court concluded that the "right to meaningful participation in the political process and right of access to publicly available information needed to participate in the process is a fundamental right, and an infringement of the right should receive heightened scrutiny."  *Id.* at 10.  The Court then noted that Congress had identified a history of discrimination by state governmental entities against individuals with a disability and that Title II was a congruent and proportional response to that history.  *Id.* at 10-14.  This Court thereafter denied the motion to dismiss.  *Id.* at 17.

3

Only after this Court denied their Motion to Dismiss did the House Defendants express any interest in making the legislative proceedings streamed online accessible to Reininger. The House Defendants indicated they had begun captioning some but not all legislative proceedings. In response, Reininger provided a written settlement proposal and a memorandum of law supporting his request for captioning of all proceedings.

The House Defendants, however, did not make any formal settlement counterproposal. Instead, they continued to litigate the matter. They twice amended their Answer. [Docs. No. 57 & 74]. In both Amended Answers, the House Defendants again asserted Eleventh Amendment Immunity despite this Court having already ruled for Reininger on that issue. *Id.*

Although the parties attempted in-person mediation in August 2018, the House Defendants offered no money and walked out of mediation early. The House Defendants' conduct contrasts with that of the Senate Defendants who stayed and reached settlement on terms that required them to caption legislative proceedings streamed online.

The House Defendants' lack of serious interest in resolving the case early forced Reininger to incur significant legal fees litigating the case against the House Defendants. The House Defendants' responses to Reininger's discovery requests were extremely deficient, requiring Reininger's attorneys to incur significant time corresponding with defense counsel to address these issues.

Although the House Defendants began captioning House floor proceedings while the lawsuit was ongoing, they did not begin captioning House committee meetings or make provisions for transcription of archived proceedings upon request until this year.

4

In January 2019, after more than two years of litigation, a motion to dismiss, multiple amended answers, extensive written discovery, and multiple demands on Reininger to produce settlement proposals and engage in mediation without any meaningful counteroffers, the House Defendants made a Rule 68 offer. The House Defendants offered Reininger $5,377.37. [Doc. No. 91-1] at 2. The House Defendants also offered to pay Reininger's reasonable attorneys' fees, costs, and expenses up to the time of the offer. *Id.* at 2-3. The House Defendants also agreed to allow judgment to be entered against them. *Id.* at 2. Reininger accepted the Rule 68 offer and thereafter this Court entered judgment against the House Defendants. [Doc. No. 93].

## ARGUMENT

The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794, provide for attorneys' fees and costs to prevailing parties. 42 U.S.C. § 12205 (ADA); 29 U.S.C. § 794a(b) (Rehabilitation Act). Congress provided for attorneys' fees and costs to attract competent counsel to prosecute federal civil rights claims "in order to ensure that federal rights are adequately enforced." *Perdue v. Kenny A.,* 559 U.S. 542, 550 (2010). The Supreme Court has held that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Id.* at 552.

The test for attorneys' fees and costs is straightforward in civil rights cases. Courts award attorneys' fees and costs to prevailing parties using the lodestar method, multiplying the number of hours plaintiff's counsel reasonably expended in the litigation by the attorneys' reasonable billing rates. *Hensley v. Eckerhart*, 461 U.S. 424, 433-37

5

(1983).  The Supreme Court has stated that an enhanced fee award may be necessary to ensure "fair and reasonable compensation."  *Perdue*, 559 U.S. at 553.

## I.      Reininger Is the Prevailing Party

A plaintiff is a "prevailing party" when he obtains a judgment on the merits. *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't. of Health and Human Res.*, 532 U.S. 598, 603-04 (2001).  Plaintiffs who obtain the relief available under the ADA and/or the Rehabilitation Act, including a monetary judgment, are entitled to attorneys' fees and costs.  29 U.S.C. § 794a(b); 42 U.S.C. § 12205; *see also, e.g.*, *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005).

The United States Supreme Court has explained the importance of awarding attorneys' fees and costs in civil rights cases: "When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves as a private attorney general, vindicating a policy that Congress considered of the highest priority" and "[h]e therefore should ordinarily recover an attorney's fee from the defendant—the party whose misconduct created the need for legal action."  *Fox v. Vice*, 563 U.S. 826, 833 (2011).

In this case, the availability of attorneys' fees and costs made it possible for Reininger to retain counsel to litigate this case and bring about change that results in his having meaningful access to House proceedings broadcast online.  *See Gudenkauf v. Stauffer Communs.*, 158 F.3d 1074, 1083 (10th Cir. 1998) (noting that "encouraging private enforcement and making victims whole" is "dependent upon the ability of such victims to find and retain competent counsel to handle their claims").

Reininger is a prevailing party because he accepted an Offer of Judgment from the House Defendants and this Court entered that Judgment.  The Offer of Judgment specifically recognizes Reininger's status as a prevailing party.  [Doc. No. 91-1] at 2. The House Defendants stated in their offer that they consent to a Court award "for any reasonable costs, litigation expenses, and/or attorney fees accrued by Plaintiff up to the time of this offer of judgment" as a "prevailing party". *Id.*  For this reason, Reininger is entitled to reasonable attorneys' fees and costs in litigating this case.

## II.    Reininger Has Made A Reasonable Request for Attorney Fees

The United States Supreme Court has established the framework and methodology for calculation of the amount of a reasonable attorneys' fee to be awarded to the prevailing party. This calculation, commonly termed the "lodestar," is based upon "the number of hours reasonable expended on the litigation multiplied by the reasonable hourly rate" for the attorney's services.  *Hensley*, 461 U.S. at 433-37.

### *Hourly Rates*

The lodestar calculation uses the prevailing market rates. *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  As the Supreme Court has held, "reasonable fees . . . are to be calculated according to the prevailing market rates in the community, regardless of whether plaintiff is represented by private or non-profit counsel." *Id.*  Finally, the lodestar should be calculated using current rates, in order to offset the effects of inflation and lost interest resulting from delay in payment of fees. *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).  Although some of Reininger's attorneys are from legal markets where rates are much higher, they all seek rates that are appropriate to Oklahoma City.

*Reasonable Hours Expended*

The second part of the lodestar calculation is based on the hours "reasonably expended" on the case. *Hensley*, 461 U.S. at 434. Counsel for the prevailing party should exercise "billing judgment" and "make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* Counsel "should submit evidence supporting the hours worked." *Id.* at 433. As described below, Reininger's attorneys have exercised billing judgment and seek fees only for time reasonably expended litigating this case against the House Defendants.

**A. Reininger Has Made a Reasonable Request for Attorneys' Fees**

In this case, after significant reduction in hours through the exercise of billing judgment, application of the lodestar results in $75,242.50 in attorneys' fees. In this particular case, an enhancement of 1.25 is necessary to ensure that Reininger's attorneys receive a fee award that is fair and reasonable given the efficiency with which they worked in this matter, their thorough familiarity with federal disability law and representing deaf individuals, the nationwide precedent that they obtained as a result of this Court's decision, and the extensive time that they had to put in assembling this fee petition that would otherwise go uncompensated. These fees are the result of Defendants mounting an aggressive defense that included filing a motion to dismiss, engaging in discovery, and dragging out settlement talks for two years before relenting and implementing the exact policy change that Reininger had sought prior to filing this lawsuit. On these facts, an enhanced fee award of $94,053.12 is reasonable.

Reininger's basis for lodestar calculation is described below.

8

### B. Reininger's Counsel Seek Reasonable Hourly Rates

In this case, Reininger retained on a fully contingent basis the services of the National Association of the Deaf (NAD), Stein & Vargas, LLP, and the Oklahoma Disability Law Center (ODLC) to take on defendants with extraordinary power and influence – defendants against whom not many private bar attorneys would be willing to litigate. The importance and complexity of this litigation required the combined, unique expertise of these firms focusing on disability rights advocacy.

NAD is a not-for-profit public interest organization whose primary mission is to advocate for the legal rights of deaf individuals. Stein & Vargas, LLP is a private law firm that specializes in litigation on the behalf of deaf individuals. Stein & Vargas, LLP has lawyers fluent in sign language who can communicate directly with deaf clients such as Reininger. ODLC is Oklahoma's protection and advocacy agency and litigates disability rights issues including those on behalf of people who are deaf. ODLC served as local counsel and also provided expertise on the structure of Oklahoma's legislature.

ODLC is the federally mandated Protection and Advocacy System for the state of Oklahoma. ODLC has much expertise regarding issues related to disability law and disabilities in general, including those affecting deaf individuals. However, due to its funding, ODLC was not able to bear the costs of this case on its own. Given the need for out-of-town counsel, a reasonable billing rate should reflect the risk and cost of the litigation and the market for the services that NAD and Stein & Vargas, LLP provide. The attorneys in this case have nonetheless exercised billing judgment by charging at the prevailing rates in Oklahoma, even though out-of-town counsel was necessary in this

case and those attorneys can command significantly higher rates in their home jurisdictions.  The attorneys' reasonable hourly rates follow.

### 1. National Association of the Deaf

NAD is the country's oldest civil rights organization, and the oldest and largest civil rights organization dedicated to protecting the rights of deaf individuals in the United States.  The NAD's Law and Advocacy Center was founded in 1976 and has continuously engaged in deaf rights litigation since that time.

### a) Marc Charmatz

Marc Charmatz has litigated the most important civil rights cases involving deaf people for more than 43 years in courts throughout the United States, including in the United States Supreme Court. His expertise is unparalleled and invaluable; indeed, he is considered "the father of deaf law".  Despite his 43 years of unique, directly relevant, and necessary experience, he only requests an hourly rate of $400 in deference to the hourly rates typically charged in this market.

Mr. Charmatz currently serves as a senior attorney at the NAD.  From 1977 to 2002, Mr. Charmatz was the director of the NAD Law and Advocacy Center, representing deaf and hard-of-hearing individuals in areas of employment, education, health care, equal access issues related to local and state governments, and equal access issues related to public accommodations.  He has litigated disability discrimination cases on behalf of deaf and hard-of-hearing individuals in the United States Supreme Court, many federal appeals courts, and federal district courts throughout the country.  In 1977,

Mr. Charmatz served as co-counsel in the first case brought after the promulgation of the first section 504 regulations.  He also served as co-counsel in the first two section 504 cases to reach the Supreme Court.  Mr. Charmatz also served as co-counsel in one of the first jury trials under Title II of the ADA.

Mr. Charmatz was an Adjunct Professor at the University of Maryland Francis King Carey School of Law, where he taught the Civil Rights of Persons with Disabilities Clinic for eighteen years.  For more than 25 years, Mr. Charmatz served as a consultant to the American Bar Association Commission on Disability Rights, and he was a contributing writer to the ABA's Mental and Physical Disability Law Reporter.  After graduating from law school in 1972, Mr. Charmatz worked as an associate at a law firm specializing in labor law.  He received his B.A. from New York University and his J.D. from Northwestern University School of Law.  *See* Ex. B, Affidavit of Marc Charmatz.

The Local Rules of the United States District Court for the District of Maryland publishes guidelines for reasonable hourly rates within that jurisdiction.  According to those guidelines, attorneys with Mr. Charmatz' years of experience command an hourly rate up to $475.00 per hour.  *Id.*

Eight years ago, NAD received a fee award in *Feldman v. Pro-Football, Inc.*, 806 F. Supp. 2d 845, 847-48 (D. Md. 2011), that was based on a $400 per hour rate for Mr. Charmatz.  The rate that Mr. Charmatz seeks in this case -- $400 per hour -- is exceedingly conservative given that it is now 2019 and Mr. Charmatz has 43 years of practice representing deaf individuals in ADA and section 504 cases.

b)  Debra Patkin

The NAD requests an hourly rate of $325 for the work of Debra Patkin in this case.  Ms. Patkin is a deaf attorney fluent in American Sign Language.  She is a member of the bar of the United States Supreme Court, the State of Maryland Bar, and the California State Bar.  She has been practicing law since 2007.

From 2007 to 2009, Ms. Patkin worked as the Disability Rights Center in Los Angeles advocating for the rights of individuals with a disability.  From 2009 until 2018, Ms. Patkin was employed as an attorney with the NAD where she managed a litigation and appellate caseload focusing on the civil rights of deaf individuals under the ADA and Rehabilitation Act.  Ms. Patkin is in demand as a public speaker and has presented throughout the United States.[2]  *See* Ex. F, Affidavit of Debra Patkin.

2.  *Stein & Vargas, LLP*

The law firm of Stein & Vargas specializes in nationwide impact litigation representing deaf individuals in disability discrimination cases.  Founded in 2009, Stein & Vargas, LLP focuses exclusively on defending the rights of individuals with a disability throughout the United States.  In addition to litigation, Stein & Vargas, LLP has developed a national reputation for federal advocacy on behalf of those with disabilities and has made significant advances in asserting the rights of deaf individuals.

---

[2] Ms. Patkin is currently employed at the Federal Communications Commission where advises on access to telecommunications issues concerning individuals with a disability.

a) <u>Michael Stein</u>

Michael Stein's usual and customary rate charged to paying clients is $685 per hour, but in deference to the market rates in Oklahoma, he has reduced his hourly rate request to $325, a reduction of over 50%.

Mr. Stein is a deaf attorney fluent in American Sign Language who graduated from Princeton University and from Harvard Law School where he was Notes Editor for the *Harvard Law Review*.  He clerked for the Honorable William G. Young in the United States District Court for District of Massachusetts in 2006-2007.  He was a Skadden Fellow with NAD from 2007 through 2009.  For the past decade, he has been a partner with the firm Stein & Vargas, LLP litigating discrimination cases on behalf of deaf individuals throughout the United States.

Mr. Stein has served as counsel in numerous landmark cases involving the rights of deaf individuals including *Argenyi v. Creighton Univ.*, 703 F.3d 441 (8th Cir. 2013) (holding that medical schools must provide deaf students with an opportunity equal to that of hearing students); *Germano v. Int'l Profit Ass'n*, 544 F.3d 798 (7th Cir. 2008) (case of first impression holding that statements made through a relay service may be used to prove disability discrimination); *Enos v. State of Arizona, et al.*, No. CV-16-00384-PHX-JJT, 2017 U.S. Dist. LEXIS 19268 (D. Ariz. Feb. 10, 2017) (holding that 911 call centers may be required to accept text messages to ensure that deaf callers can contact 911 in emergencies); *Featherstone v. Pacific Northwest Univ.*, No. 1:CV-14-3084-SMJ, 2014 U.S. Dist. LEXIS 102713 (E.D. Wa. July 22, 2014) (entering a preliminary injunction requiring a medical school to accept a deaf student whose

13

admission it had withdrawn on the basis of disability); *Prakel v. State of Indiana*, 100 F. Supp. 3d 661 (S.D. Ind. 2015) (holding that courts may be required to provide interpreters for deaf spectators); *Mosier v. Kentucky*, 675 F. Supp. 2d 693 (E.D. Ky. 2009) (holding that courts may be required to provide interpreters for deaf attorneys).

Mr. Stein has also presented nationally and internationally on the rights of deaf individuals.  He has also taught courses on disability law at Gallaudet University and the Rochester Institute of Technology's National Technical Institute for the Deaf.  *See* Ex. D, Affidavit of Michael Stein.

b)  Martie Lafferty

Martie Lafferty requests an hourly rate of $350.  She has been practicing law for 19 years and her practice focuses on the representation of people with disabilities. Lafferty served as co-counsel for the plaintiffs in the landmark case, *Lane v. Tennessee*, negotiating twenty-six historic settlement agreements and monitoring compliance to ensure access to the courts for individuals with disabilities in the State of Tennessee. Lafferty has also secured important victories overturning restrictions on assistance animals in housing, medical, business, and educational settings.  Lafferty has litigated numerous cases on behalf of deaf clients.  Previously, Lafferty served for thirteen years as Legal Director at Disability Rights Tennessee (DRT).  Ms. Lafferty serves on the Board of Directors of the Disability Rights Bar Association and the Tennessee Fair Housing Council.  *See* Ex. C, Affidavit of Martie Lafferty.

3. *Oklahoma Disability Law Center*

Oklahoma Disability Law Center, Inc. is a federally mandated private, non-profit organization designated as Oklahoma's Protection and Advocacy System charged with the duty of representing the legal and human rights of individuals with disabilities throughout the State of Oklahoma.  ODLC's legal representation is devoted entirely to civil rights laws designed to protect against disability discrimination.

a)  Brian S. Wilkerson

Brian S. Wilkerson requests an hourly rate of $350.  He received his Juris Doctor from the University of Oklahoma College of Law in 1996 and has been practicing law in Oklahoma for 22 years.  Mr. Wilkerson is the Director of Litigation and Legal Services at ODLC.  During the course of his practice at ODLC, he has provided representation to individuals with disabilities in the administrative and local venues.  The legal issues people with disabilities encounter are complex, fact-intensive and require expert knowledge of disability law, civil rights law and civil procedure.

Throughout his time at the ODLC, he has represented, counseled and educated many individuals with disabilities on their rights under the ADA and section 504 of the Rehabilitation Act.  He supervises the screening of potential cases from the many hundreds of individuals who request representation and advice from the ODLC every year.  Because of his experience and expertise, he is routinely invited to speak at seminars and conduct trainings on the legal rights of individuals with disabilities.

Mr. Wilkerson came to ODLC with extensive experience as a litigator for several firms.  He has represented clients as lead or co-counsel in hundreds of state district court

negligence, criminal (felony/misdemeanor), guardianship, employment, and parental rights actions.  *See* Ex. G, Affidavit of Brian S. Wilkerson.

b)  <u>Joy Turner</u>

Joy Turner requests an hourly rate of $325.  She received her Juris Doctor from the Oklahoma City University of Oklahoma College of Law in May 1999 and has been practicing law in Oklahoma for 20 years.  She is Managing Attorney with ODLC, where she has worked since 2000.  Throughout the course of her practice at the ODLC, Ms. Turner has represented individuals with disabilities in court and administrative proceedings that often require expert knowledge of disability law.

Ms. Turner also has expertise in non-litigation advocacy for individuals with disabilities.  She has represented, counseled and educated thousands of individuals with disabilities on their rights under the ADA and Section 504 of the Rehabilitation Act in her 18 years at the ODLC.  She screens potential cases from the many hundreds of individuals who request representation and advice from the ODLC every year.  She is routinely invited to speak at seminars, has been asked to testify in court as an expert on deaf issues and has been asked to conduct trainings on the legal rights of individuals with disabilities.  *See*. Ex. E, Affidavit of Joy Turner.

**C.  The Record and Case Law Support Reininger's Attorneys' Hourly Rates**

Reininger offers the affidavit of Nicole Snapp-Holloway, an experienced and well-respected Oklahoma litigator who opines that the rates for Reininger's counsel are reasonable given the attorneys' unique expertise and the risk of litigating a case such as

this.  She also opines that the hours expended by Reininger's counsel are reasonable.  *See* Ex. H, Affidavit of Nicole Snapp-Holloway.

Nicole Snapp-Holloway has been a member of the Oklahoma bar since 1999.  She is an attorney with Maples, Nix & Diesselhorst in Oklahoma City.  Ms. Snapp-Holloway has extensive experience in employment law and civil rights litigation, discrimination and sexual harassment.  She spent much of her career specializing in employment law, including employment discrimination cases and ADA cases.  She has practiced solely on a billable basis and is familiar with the market rates in Oklahoma City.  *See id.*

Although out-of-state counsel may be awarded the rates commanded in their home jurisdiction, particularly where, as here, the expertise necessary and willingness to risk representation in this kind of case and against these particular defendants, was simply not available in Oklahoma, Reininger seeks only the rates that would have been justified for Oklahoma attorneys with like experience and expertise.

Reininger's attorneys accordingly seek fair and reasonable rates here in Oklahoma of $400 for Mr. Charmatz, $350 for Ms. Lafferty, $350 for Mr. Wilkerson, and $325 for Ms. Patkin, Mr. Stein, and Ms. Turner.

These requested rates are conservative, and below the hourly rates awarded in the past year by other judges in the Western District of Oklahoma.

In *Tabb v. Mentor Prot. Serv. LLC*, Judge DeGiusti held that a $400 per hour rate was reasonable.  Case No. CIV-17-1130-D, 2018 U.S. Dist. LEXIS 181333, at *6-7 (W.D. Okla. Oct. 23, 2018).  Judge DeGiusti held that the $400/hour rate was reasonable after considering affidavits and cases noting rates ranging from $325 to $850/hour.  *Id.*

In *Catholic Bens. Ass'n LCA v. Azar*, Judge Russell awarded fees ranging from $250 to $470/hour.  Case Nos. CIV-14-240-R, CIV-14-685-R, 2018 U.S. Dist. LEXIS 139058, at *38 (W.D. Okla. Aug. 15, 2018).  Judge Russell employed a hybrid rate combining Oklahoma City and national rates, awarding $470/hour for attorneys graduating from law school in the 1980s.  Attorneys who graduated in the 2000s were awarded rates ranging from $340 to $510/hour.

Reininger's attorneys have been exceedingly conservative with their requested rates.  For instance, Mr. Charmatz has 43 years of experience litigating *only* cases involving the rights of deaf individuals.  He has argued before the United States Supreme Court, multiple appellate courts, and been involved in many if not most of the precedent-setting cases involving deaf individuals.  His requested rate of $400/hour is low even by Oklahoma standards, when $470/hour has been awarded in this District to attorneys with far less litigation experience.

Reininger's entire legal team consists of attorneys who specialize in disability law.  Their expertise made it unnecessary for them to devote much time to researching issues such as the applicability of the ADA and Rehabilitation Act to the House Defendants, what those statutes require.  Other attorneys would not have had this knowledge and spent far more time billing for research.  Nonetheless, Reininger's attorneys have exercised billing discretion in requesting rates below recent fee awards in this district.

### D. Reininger's Counsel's Time Is Reasonable

Reininger's attorneys' fee request is based primarily on time spent on the

following issues that were essential to prevailing on the motion to dismiss and receiving

an Offer of Judgement from the House Defendants:

- Factual investigation, including the feasibility of captioning legislative
  proceedings in Oklahoma based on a survey of the captioning of legislative
  proceedings in other states.
- Pleadings;
- Successfully opposing the Motion to Dismiss;
- Preparing for and participating in a settlement conference;
- Conducting and responding to detailed written discovery and addressing
  disputes regarding same;
- Responding to the House Defendants' requests for settlement proposals.

This litigation was complex, dealing with Eleventh Amendment sovereign

immunity issues of first impression, issues surrounding the Tenth Amendment; the fact

that the House Defendants aggressively and unnecessarily prolonged, the issues; and the

stakes high.  Each member of Reininger's team took leadership in specific areas:

<u>Marc Charmatz</u>

This case originated when Reininger contacted NAD requesting legal

representation in his complaint against the Oklahoma State Legislature.  Mr. Charmatz

was the first to recognize the importance of the legal issues related to captioning of state

legislative proceedings, an issue of first impression nationally. He was actively involved

in developing the case and drafting and editing of the Complaint and Reininger's

Memorandum in Opposition to the Defendants' Motion to Dismiss. Together with Mr.

Stein, Mr. Charmatz served as lead counsel for Reininger at the settlement conference in

August 2018.  Mr. Charmatz's work dealt primarily with fact-finding (as the case

originated with him at the NAD), legal research into the applicability of Title II of the
ADA and section 504 to state legislative proceedings, legal research and editing related to
Reininger's Memorandum in Opposition to the Defendants' Motion to Dismiss, legal and
factual research related to captioning by state legislatures, and the mediation.  *See* Ex. B.

### Michael Stein

Mr. Stein took the lead in briefing and was the principal author of Reininger's
successful Response to Defendants' Motion to Dismiss.  Mr. Stein, who is fluent in
American Sign Language, also engaged in regular counseling of the client.  He worked
on discovery matters, including reviewing discovery with the client in American Sign
Language.  In addition, in preparation for the settlement conference, he researched and
took the lead in drafting a memo to Defendants regarding the strength of Reininger's case
and likelihood Reininger would prevail on the merits.  He was also the lead author of the
petition for attorney's fees and costs.  In addition, Mr. Stein worked together with Mr.
Charmatz to serve as lead counsel for the Reininger at the settlement conference in
August 2018.  *See* Ex. D.

### Martie Lafferty

Ms. Lafferty was the lead attorney on discovery, drafting discovery requests and
responses.  She was the primary contact for opposing counsel regarding discovery
planning, discovery disputes, and the possibility of settlement.  She was also involved in
drafting the Complaint and the opposition to the motion to dismiss.  Along with Mr.
Stein, she helped keep the client updated about the progress of this case.  *See* Ex. C.

<u>Debra Patkin</u>

Ms. Patkin is a deaf attorney fluent in American Sign Language and communicated with the client who is also deaf.  Ms. Patkin did factual investigation, helping draft the complaint and participating in discovery.  She also helped research and draft Reininger's response to the motion to dismiss.  *See* Ex. F.

<u>Joy Turner</u>

Ms. Turner drafted and filed the initial motion for out-of-state counsel to be admitted be admitted *pro hac vice*, researched issues such as proof of service/methods of service on governmental bodies, researched dispositive motions, prepared for and attended the scheduling conference, and researched issues related to other state legislatures' use of captioning.  *See* Ex. E.

<u>Brian Wilkerson</u>

Mr. Wilkerson reviewed and provided feedback on discovery responses.  He reviewed and assisted in preparation of Reininger's settlement conference statement and attended the settlement conference.  *See* Ex. G.

To guard against overlap and duplicative billing for its legal team, Reininger's attorneys have meticulously documented their time and exercised billing judgment and significantly reduced the time for which compensation is sought by many hours worked in furtherance of this litigation.  They also removed all time incurred after the House Defendants tendered their Offer of Judgment, including the significant time necessary to preparation of this fee petition.

Significantly, Reininger has also exercised billing discretion by not seeking fees for work done by other attorneys from Stein & Vargas, LLP, ODLC, and NAD despite their work on this case.  At Stein & Vargas, LLP, Mary Vargas and attorney with more than 20 years of experience litigating on behalf of deaf individuals, had 13.7 hours in this case providing valuable input regarding all key decisions for this litigation.  Ms. Vargas also interviewed potential witnesses for the case.  Despite the importance of her contribution to the litigation, Reininger's attorneys are exercising billing discretion in not seeking fees for her time.

Reininger further exercised billing discretion in seeking fees for only two attorneys at ODLC and NAD each.  Reininger is not seeking fees for the ODLC attorneys Kayla Bower, Gary Taylor, or Melissa Sublett even though all appeared in this case. Reininger is also not seeking fees for NAD attorney and CEO Howard Rosenblum.

The application of the lodestar in this case is summarized in this chart:

| Attorney | Hours after exercising billing discretion[3] | Requested Rate | Fee |
|---|---|---|---|
| Marc Charmatz | 37.3 | $400 | $14,920.00 |
| Michael Stein | 63.1 | $325 | $20,507.50 |
| Martie Lafferty | 73.9 | $350 | $25,865.00 |
| Debra Patkin | 19.5 | $325 | $6,337.50 |
| Joy Turner | 14.7 | $325 | $4,777.50 |
| Brian Wilkerson | 8.1 | $350 | $2,835.00 |
| **Total** | | | $75,242.50 |

---

[3] Travel time was reduced by half to ensure travel was billed at half-rate.

**E.  An Enhancement Is Warranted To Ensure that the Fee Award Is Reasonable**

Although the lodestar is presumptively reasonable, an enhancement is warranted in this case to ensure that the fee award is fair and reasonable.

The United States Supreme Court has acknowledged that an enhanced fee award may be necessary to ensure "fair and reasonable compensation." *Perdue*, 559 U.S. at 553.  The Tenth Circuit has explained that an enhanced fee may be warranted when the plaintiff achieves "victory under unusually difficult circumstances or with an extraordinary economy of time – or upon the result achieved – total victory or establishment of significant new law." *Ramos v. Lamm*, 713 F.2d 546, 557 (10th Cir. 1983).  This may be the case, for instance, when "the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value." *Mkt. Ctr. East Retail Prop. v. Lurie*, 730 F.3d 1239, 1247 (10th Cir. 2013).  In this case, Reininger's attorneys worked with exceptional efficiency in obtaining a favorable decision of first impression in the country on the applicability of sovereign immunity to requests for captioning of legislative proceedings.

First, Reininger's attorneys have extensive experience litigating disability discrimination cases and are not only familiar with cases involving the rights of deaf individuals but in many examples have served as counsel in the other cases the results of which were relied upon in litigating this case.  An enhancement will ensure that the fee award is reasonable and fair and that Reininger's attorneys are not inadvertently penalized for working efficiently compared to other attorneys not as skilled in disability

discrimination law or who do not have experience working with deaf individuals. *See Ramos*, 713 F.2d at 557 (stating that economy of labor is ground for an enhancement).

Second, this was a case of first impression whether sovereign immunity barred claims for damages against Defendants for failing to caption legislative proceedings. The resulting decision holding that Title II validly abrogated sovereign immunity in this context has become the leading case in the field. Since this case resulted in "significant new law," Reininger's counsel obtained an exceptional result that warrants an enhancement. *See id.* (stating that obtaining new precedent is a ground for enhancement).

Beyond the unique expertise and legal implications of the result achieved, the practical implications of the result bear consideration on the fees awarded. While this matter was not undertaken as a class action, the results have opened the doors to public participation for deaf individuals throughout Oklahoma. While class action litigation can be financially lucrative for counsel, counsel here focused on using their expertise to achieve the result through the most expeditious means possible – a litigation strategy that was not only successful in empowering citizens like Reininger who are deaf but also that has saved considerable resources for both sides of this litigation while still achieving a landmark result. In light of the foregoing, Reininger's attorneys request a modest enhancement of 1.25. Since the lodestar yields $75,242.50, application of the enhancement results in a total fee award of $94,053.12.[4]

---

[4] This lodestar with the enhancement still does not account for the fact that Reininger's attorneys had to spend extensive time putting together this fee petition. They devoted dozens of hours to putting this petition together out of necessity even though the House Defendants' Rule 68 offer limited fees and costs to the date of the offer.

24

### III.    Reininger Is Entitled to Costs

The ADA and the Rehabilitation Act provide for litigation expenses and costs to prevailing plaintiffs.  29 U.S.C. § 794a(b); 42 U.S.C. § 12205.  The House Defendants stated in their offer of judgment that they would pay reasonable costs and litigation expenses accrued up to the time of the offer.  [Doc. No. 91-1] at 2-3.

Reininger's attorneys incurred $2,568.12 in costs and expenses up to the time of the offer.  *See* Ex. A, Declaration of Michael Stein (describing overall expenses); Ex. B, Affidavit of Marc Charmatz (itemizing NAD expenses); Ex. D, Affidavit of Michael Stein (itemizing Stein & Vargas expenses).  These costs primarily include filing fees and travel costs.  These litigation expenses were reasonable and necessary to this case. Reininger's attorneys exercised discretion and are not seeking reimbursement for postage, meal expenses, mileage, and parking.  Reininger's attorneys are further exercising discretion in seeking only half of remaining costs given that all expenses were incurred when litigating the case against all defendants including the Senate Defendants.

With the 50% reduction in costs and expenses sought after exercising discretion in not seeking reimbursement for all costs incurred in litigating this case, Reininger requests reimbursement of costs and expenses in the amount of $1,059.10.

### IV.    Conclusion

Based on the foregoing, this Court should award Reininger reasonable attorneys' fees and costs as follows: $94,053.12 in reasonable attorneys' fees; and $1,059.10 in reasonable costs and litigation expenses.

Date: March 17, 2019                    s/Michael Stein
                                        Michael Steven Stein
                                        Mary Vargas
                                        Stein & Vargas, LLP
                                        10 G Street NE, Suite 600
                                        Washington, DC 20002
                                        Phone: (202) 248-5092
                                        Fax: (888) 778-4620
                                        michael.stein@steinvargas.com
                                        mary.vargas@steinvargas.com

                                        Marc Charmatz
                                        National Association of the Deaf
                                        Law and Advocacy Center
                                        8630 Fenton Street, Suite 820
                                        Silver Spring, MD 20910
                                        Phone: (301) 587-7732
                                        Fax: (301) 587-1791
                                        marc.charmatz@nad.org

                                        Joy J. Turner
                                        Brian Wilkerson
                                        Oklahoma Disability Law Center, Inc.
                                        2915 Classen Blvd., Suite 300
                                        Oklahoma City, OK 73106
                                        Tel: (405) 409-5759
                                        Fax: (405) 525-7759
                                        joy@okdlc.org
                                        brian@okdlc.org

                                        Melissa K. Sublett
                                        Oklahoma Disability Law Center, Inc.
                                        2828 E. 51st Street, 302 Interim Plaza
                                        Tulsa, OK 74105
                                        Tel: (918) 830-5559
                                        Fax: (918) 743-5883
                                        melissa@okdlc.org

                                        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of March 2019, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing to the following:

DEVAN A. PEDERSON, OBA#16576
DESIREE D. SINGER, OBA#33053
Assistant Attorneys General
Oklahoma Office of the Attorney General Litigation Section
devan.pederson@oag.ok.gov
desiree.singer@oag.ok.gov
*Attorneys for the Defendants State of*
*Oklahoma, Oklahoma House of Representatives*
*and Speaker of the Oklahoma House of Representatives*

s/ Joy Turner
Joy Turner