# IN THE UNTIED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHNNY REININGER, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-1241-SLP |
| | ) |
| STATE OF OKLAHOMA, | ) |
| OKLAHOMA STATE SENATE, | ) |
| GREG TREAT, in his official | ) |
|    capacity as President Pro Tempore | ) |
|    of the Oklahoma State Senate, | ) |
| OKLAHOMA HOUSE OF | ) |
|    REPRESENTATIVES, and | ) |
| CHARLES McCALL, in his official | ) |
|    capacity as Speaker of the | ) |
|    Oklahoma House of Representatives, | ) |
| | ) |
| Defendants.[1] | ) |

## **O R D E R**

Before the Court is Plaintiff Johnny Reininger, Jr.'s Motion for Reasonable Attorneys' Fees and Costs [Doc. No. 98]. It is at issue. *See* Resp., Doc. No. 99; Reply, Doc. No. 100; Surresponse, Doc. No. 103; Surreply, Doc. No. 106.

**I.    Background**

Plaintiff filed this action in October 2016 against the State of Oklahoma, the Oklahoma House of Representatives and Oklahoma Senate, and the leaders of each legislative chamber in their official capacities. The legislative bodies and their individual leaders are referred to together as the House and the Senate, respectively, in this Order.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), now-president pro tempore Senator Treat has been automatically substituted for former president pro tempore Senator Schulz.

The State was sued by Plaintiff only to the same extent that Plaintiff sued the individual legislative bodies.

Plaintiff, who is deaf, alleged that Defendants' online streams of legislative proceedings (both floor proceedings and committee proceedings), as well as their videos of previous proceedings, were required to include captioning under (i) Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, and its implementing regulations and (ii) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. As relief, Plaintiff sought (i) "a declaratory judgment that Defendants' policies, procedures, and practices subjected [Plaintiff] to discrimination in violation of [the afore-mentioned statutes]," (ii) enjoinment of "Defendants from implementing or enforcing any policy, procedure, or practice that denies individuals who are deaf or hard of hearing, such as Plaintiff, full and equal enjoyment of and an equal opportunity to participate in and benefit from Defendants' services and programs," (iii) enjoinment of "Defendants from implementing or enforcing any policy, procedure, or practice that limits or restricts individuals who are deaf or hard of hearing, such as Plaintiff, from full and equal access to the video and audio streamlining of legislative proceedings," (iv) orders from the Court for Defendants "to develop and comply with written policies, procedures, and practices to ensure that Defendants do not discriminate in the future against Plaintiff and other similarly situated individuals who are deaf or hard of hearing" and for Defendants "to make accessible to individuals who are deaf or hard of hearing all audio and video content on their websites, including by displaying simultaneous captioning," (v) training of Defendants' representatives and employees regarding rights of persons who are deaf or

hard of hearing, (vi) compensatory damages, and (vii) attorneys' fees, and costs. Compl. at pp. 7-8, Doc. No. 1.

Defendants jointly filed a motion to dismiss for lack of subject-matter jurisdiction in which they argued that they were sovereignly immune from ADA liability under the Eleventh Amendment to the U.S. Constitution and that Defendants' ADA claim violated the Tenth Amendment to the extent Plaintiff requested a mandatory injunction directing Oklahoma's legislative bodies to act in certain manners. *See* Mot. to Dismiss, Doc. No. 26. In November 2017, Judge Timothy D. DeGiusti (to whom this case was then assigned) denied Defendants' motion, finding that the right at issue in the case was "a citizen's right to participate in the political process and to have meaningful access to the tools necessary to such participation" and that Defendants' Eleventh Amendment sovereign immunity had been abrogated by Title II of the ADA. Order of Nov. 9, 2017, at 8, Doc. No. 40. He further determined that Defendants' Tenth Amendment argument related to one of Plaintiff's proposed remedies (an injunction), not dismissal of one of Plaintiff's claims, and therefore was not ripe for determination.

The case was subsequently transferred to this Court, and discovery opened on January 8, 2018. *See* Jt. Status Report & Disc. Plan ¶ 8(A), Doc. No. 62. The case was stayed in June 2018, pending a judicial settlement conference. *See* Order of June 18, 2018, Doc. No. 71. The parties participated in such a conference with Judge Shon T. Erwin and, at that conference, Plaintiff and the Senate reached a settlement. *See* Order of Aug. 14, 2018, Doc. No. 84. Attorneys' fees and costs for Plaintiff's claims against the Senate and the recoverability of the same, if any, are not at issue herein.

Plaintiff's claims against the House continued after those parties failed to reach an agreement at the judicial settlement conference, and a new scheduling order was entered by which Plaintiff and the House could re-engage in discovery. *See* Scheduling Order, Doc. No. 86. On January 9, 2019, the House extended a Rule 68 offer of judgment to Plaintiff, which Plaintiff accepted on January 17, 2019. *See* Notice of Acceptance of Offer of J., Doc. No. 91. In its offer, the House "continue[d] to deny that [it is] liable to Plaintiff for the claims asserted in this lawsuit" and offered judgment in the amount of $5,377.37 only. Offer of J. by House Defs. 2, Doc. No. 91-1. The House further "consent[ed] to allow the Court to add an additional amount for any reasonable costs, litigation expenses, and/or attorney fees accrued by Plaintiff up to [January 9, 2019] that Plaintiff may be entitled to recover as a 'prevailing party' under 42 U.S.C. § 12205." *Id.* The Court issued judgment for Plaintiff on January 17, 2019. *See* J. for Pl., Doc. No. 93.

## II. Discussion and analysis

Plaintiff now has filed his attorneys' fees and costs request, which the House opposes in part. Specifically, the House does not oppose Plaintiff's entitlement to attorneys' fees and costs. Nor does the House oppose the hourly rates for Plaintiffs' attorneys who worked on this matter. And the House likewise does not object to Plaintiff's requested costs. The Court therefore finds that Plaintiff is the prevailing party as to his claims against the House and that he is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 12205. The Court likewise finds that the hourly rates for Plaintiffs' attorneys are

reasonable based on the Court's knowledge of prevailing attorneys' rates in this district.[2] *See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir. 1994) ("A district judge may turn to [his] own knowledge of prevailing market rates as well as other indicia of a reasonable market rate." (quotation marks and citation omitted)). And the Court finds that Plaintiff's requested costs are reasonable and should be awarded to him.

At issue, then, is the amount of attorneys' fees to be awarded to Plaintiff. He seeks $93,296.25. *See* Reply 10, Doc. No. 100. The House, in turn, argues for an award of only $10,754.74 (i.e., two times the amount of the judgment entered against the House). *See* Resp. 4, Doc. No. 99. In reaching its determination of what amount to award, the Court of cognizant that "a reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (quotation marks and citation omitted). And "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Id.*

The Court starts with the lodestar calculation, which is $75,242.50. *See* Reply 10, Doc. No. 100. "[T]here is a strong presumption that the lodestar is sufficient" because, among other reasons, it "produces an award that *roughly* approximates the fee that the prevailing attorney[s] would have received if [they] had been representing a paying client who was billed by the hour in a comparable case." *Perdue*, 559 U.S. at 546, 551.

---

[2] Some of Plaintiff's counsel are from Washington D.C. and surrounding areas. The Court has evaluated the reasonableness of their rates in comparison to the legal market of this district, not their home legal market.

5

The House argues against the inclusion of certain tasks and amounts in the lodestar calculation. The House faults Plaintiff's counsel, and specifically Ms. Lafferty, for block-billing. The Court has reviewed the contemporaneous time records submitted by Plaintiff's counsel and finds that a block-billing reduction is necessary because of Ms. Lafferty's failure to explain within a few of her time entries how her time was divided between disparate tasks. However, the time records provided to the Court are not so deficient that the Court is unable to determine what actions were performed by which counsel on which days. Thus, the block-billing reduction applied will be minimal. *See Henderson v. Horace Mann Ins. Co.*, 560 F. Supp. 2d 1099, 1117 (N.D. Okla. 2008) (collecting cases showing block-billing reductions ranging from 10% to 35%). Accordingly, the Court has applied a 10% reduction for block-billing only to those time entries identified by the House as having been block-billed by Ms. Lafferty. *See* Resp. 6-7, Doc. No. 99. The Court finds a greater and/or more broadly applied block-billing reduction to be unnecessary.

The House next argues (without citation to any legal authority) that certain of the hours for which reimbursement is requested by Plaintiff should be reduced by half because they relate to Plaintiff's claims against both the Senate and the House, not just his claims against the House. *See id.* at 8-9. But the activities in the entries identified by Plaintiff— e.g., filing his complaint, drafting and reviewing motions—would have been performed by Plaintiff's counsel even if this lawsuit had been solely against the House. The House does not identify any entries in Plaintiff's counsel's billing records which appear to relate only to Plaintiff's claims against the Senate and not his claims against the House. Further, Plaintiff's claims against the Senate were based on common facts and legal theories as

those in his claims against the House, and none of his claims were frivolous. The Court therefore rejects the House's reduction request on this basis. *See Zinna v. Congrove*, No. 05-cv-1016-PAB, 2019 WL 1236725, at *7 n.13 (D. Colo. Mar. 18, 2019).

Finally, the House asserts that the amount recovered by Plaintiff for certain of his attorneys' actions should be reduced because the tasks are administrative ones normally performed by paralegals or administrative staff, not attorneys. The Court has reviewed the tasks complained about by the House and finds that they are not ones which are necessarily performed by firms' administrative persons or paralegals in the general course of litigation, though they sometimes may be. *See Henderson*, 560 F. Supp. 2d at 1113-14 (identifying tasks normally performed by paralegals). Many attorneys prepare and file their own documents, forward proposed orders to the Court, and docket their own deadlines. Nor does the authority cited by the House—*Bishop v. Smith*, 112 F. Supp. 3d 1231 (N.D. Okla. 2015), and *Oklahoma Natural Gas Co. v. Apache Corp.*, 355 F. Supp. 2d 1246 (N.D. Okla. 2004)—support its position. In *Bishop*, so-called "secretarial" tasks were not excluded from the award of attorneys' fees made to the prevailing party. *See Bishop*, 112 F. Supp. 3d at 1247. And in *Oklahoma Natural Gas*, the only "secretarial function" excluded from the award of attorneys' fees as being more akin to firm overhead than otherwise-performed-by-attorney tasks was copying—a much different task than those identified by the House in this case. *See Okla. Nat'l Gas*, 355 F. Supp. 2d at 1257. The Court finds no need to reduce the amount to be recovered by Plaintiff on this account.

Next, the Court turns to Plaintiff's argument for a 25% enhancement of the lodestar amount. Such enhancements, while permitted, are to be awarded only "in rare and

7

exceptional circumstances." *Perdue*, 559 U.S. at 552 (quotation marks and citation omitted). An enhancement may not be "based on a factor that is subsumed in the lodestar calculation" such as (generally) "the novelty and complexity of a case" or "the quality of an attorney's performance." *Id.* at 553. The burden of proving entitlement to an enhancement is borne by the moving party. *See id.*

Here, Plaintiff has not shown an entitlement to an enhancement of the lodestar calculation and has not overcome the presumption of sufficiency that accompanies the lodestar amount. Plaintiff argues that it obtained a "nationwide precedent" and that failing to include an enhancement would mean that "the extensive time that [Plaintiff's counsel] had to put in[to] assembling th[e] fee petition . . . would otherwise go uncompensated." Mot. 8, Doc. No. 98-1; *see also id.* at 24 n.4. The nature of the precedent obtained by Plaintiff is the reason that the Court finds *infra* that no reduction should be applied to those attorneys' fees which accrued before Judge DeGiusti rejected Defendants' dismissal motion. The precedent is not so significant that it merits an enhancement, and the reasons that Plaintiff obtained the result he did on Defendants' dismissal motion are based, at least in part, on factors already taken into account in the lodestar calculation between the hours expended and the hourly rates charged. *See Perdue*, 559 U.S. at 553. The latter issue—the lack of compensation for Plaintiff's counsel in assembling and filing the instant motion, reply, and surreply—is part of the deal that Plaintiff agreed to when he accepted the House's Rule 68 offer of judgment. *See* Offer of J. by House Defs. 2, Doc. No. 91-1 ("As part of this offer to confess judgment, the House Defendants also consent to allow the Court to add an additional amount for any reasonable costs, litigation expenses, and/or attorney

8

fees accrued by Plaintiff *up to the time of this offer of judgment* that Plaintiff may be entitled to recover as a 'prevailing party' under 42 U.S.C. § 12205." (emphasis added)).  Thus, no enhancement is called for in this case.

As to Plaintiff's argument that the overall amount of attorneys' fees (enhancement included) he requests is reasonable because of the expertise of his counsel in legal matters involving deaf and hard of hearing individuals, the U.S. Supreme Court has already cautioned that issues such as counsels' expertise generally are accounted for in determining the reasonableness of the hourly rates charged, not whether an enhancement is warranted. *See Perdue*, 559 U.S. at 553.  Such is the case here.  The Court has considered Plaintiff's counsels' experience in this area of law in finding their hourly rates to be reasonable.  The Court will not twice count their experience in likewise finding an enhancement of the lodestar amount to be proper.

The Court is unconvinced that the lodestar calculation in this case has failed to "adequately measure [Plaintiff's] attorney[s'] true market value" in this litigation. *Perdue*, 559 U.S. at 554-55.  Nor does this case involve either "an extraordinary outlay of expenses and . . . exceptionally protracted . . . litigation" or an "exceptional delay in the payment of fees." *Id.* at 555-56.  This case lasted less than three years from initial filing to this order—not an unusual amount of time for a civil rights case with complicated constitutional questions to be addressed—and the costs incurred by Plaintiff's counsel were not unusual.  Nor has there been any unusual delay in payment of attorneys' fees.  To the extent Plaintiff could argue there has been such a delay, his counsel was aware of the likelihood of such a delay when they agreed to represent Plaintiff on a contingency basis (*see* Mot. 9, Doc. No.

9

98-1)—knowingly making themselves dependent on the ADA's fee-shifting provision for payment of their fees and costs and the attendant delay associated with such awards. *See Perdue*, 559 U.S. at 555 ("[W]hen an attorney agrees to represent a civil rights plaintiff who cannot afford to pay the attorney, the attorney presumably understands that no reimbursement is likely to be received until the successful resolution of the case . . . .").

Finally, the Court turns to the House's results-achieved argument for reducing the attorneys' fees to be awarded to Plaintiff to below the lodestar amount. The results obtained by a plaintiff may, in some cases, counsel in favor of a reduction of the lodestar amount to reach a total that is reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). In determining whether a reduction is appropriate, the Court is to "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. This case does not neatly fit within the two-question guidance provided for consideration of a reduction by *Hensley*, which addressed a party prevailing on some claims, but losing on other claims. *See id.* at 434-35. Here, Plaintiff clearly prevailed on both of his claims against the House—one under the ADA and one under the Rehabilitation Act—through his acceptance of the House's Rule 68 offer of judgment.

Plaintiff did not, however, prevail as to all forms of relief that he requested in those claims. Guidance for such a situation is provided by *Hensley*, which stated as an example that when "a plaintiff . . . failed to recover damages but obtained injunctive relief, or vice versa, [he] may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Id.* at 435 n.11. That is, the Court

10

may take into consideration that all types of relief initially sought by a plaintiff were not obtained by him in determining whether to reduce the attorneys' fee award below the lodestar amount.

Here, in reaching its decision that the full lodestar-calculated amount should not be awarded to Plaintiff, the Court does not consider the amount of the judgment obtained by Plaintiff in direct comparison to the amount of attorneys' fees sought by Plaintiff—a practice that Plaintiff correctly recognizes has been rejected (*see City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (plurality opinion))—but instead considers the results achieved by Plaintiff as compared to what he sought out to obtain in his Complaint. The Court's focus on the results obtained leads the Court to divide this litigation into two phases—that which preceded Judge DeGiusti's denial of Defendants' dismissal motion and that which followed. As to the earlier period, the Court finds that Plaintiff obtained his intended result—defeat of Defendants' Eleventh Amendment immunity claim and continuation of this suit. The Court will therefore not reduce the lodestar amount for time entries on or before November 9, 2017. But the Court cannot say the same for the later period, during which Plaintiff's victory was limited to receipt from the House of $5,377.37 and did not include a declaratory judgment, an injunction, a requirement that the House develop and comply with certain policies, or a requirement that the House's representatives and employees undergo training—all of which Plaintiff sought. *See* Compl. at pp. 7-8, Doc. No. 1. For those time entries from November 10, 2017, through January 9, 2019 (the date of the House's Rule 68 offer of judgment), the Court finds that a 50% reduction is appropriate based on the relief obtained by Plaintiff as compared to the relief he sought and

the overall hours expended by counsel during that time. *Cf. Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1077, 1085 (10th Cir. 1998) (affirming district court's reduction of lodestar figure by 50%) Said differently, for the later portion of this lawsuit, the relief obtained by Plaintiff—a judgment for $5,377.37—did not justify the expenditure of attorney time by his counsel for such a result. *See Hensley*, 461 U.S. at 435 n.11. The result of the Court's decision is an attorneys' fee award of $50,065.63.[3]

Plaintiff's reliance on the fact that the House was not captioning proceedings before this lawsuit and is doing so now does not alter the Court's determination that a reduction to some of the hours for which he seeks attorneys' fees is appropriate. As indicated *supra*, the judgment entered by the Court does not require such captioning (or much of the other relief sought by Plaintiff in his Complaint). The mere change of a defendant's behavior—absent a court order for such a change—does not result in the plaintiff being considered prevailing, so it likewise cannot cause an increase to a lodestar calculation or, in this case, prevent an otherwise-appropriate reduction of the attorneys' fees to be awarded. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S.

---

[3] The Court's total is based on $11,460.00 in attorneys' fees for Mr. Charmatz's efforts, $15,946.00 for Ms. Lafferty's efforts (taking into account a 10% reduction on those entries identified by the House as being block-billed and the elimination of 1.35 hours for public-relations-related activities), $13.942.50 for Mr. Stein's efforts (taking into account the elimination of 0.3 hours for public-relations-related activities), $3,287.38 for Ms. Turner's efforts (utilizing the 12.98 hours and 3.0 travel hours reflected on the submitted billing records, with the latter not further reduced beyond being billed at half-time), $3,737.50 for Ms. Patkin's efforts, and $1,692.25 for Mr. Wilkerson's efforts (including 3.0 travel hours which have not been further reduced beyond being billed at half-time). As indicated, the Court has not included time billed for public relations activities, reimbursement for which was previously (and rightfully) abandoned by Plaintiff. *See* Reply 10, Doc. No. 100.

598, 600 (2001) (indicating that a party who "achieve[s] the desired result [of the litigation] because the lawsuit brought about a voluntary change in the defendant's conduct" is not considered a prevailing party). *Feldman v. Pro Football, Inc.* (relied on by Plaintiff) is distinguishable from the instant case because it involved the district court granting summary, declaratory judgment and making specific legal determinations based on undisputed facts, not the acceptance of a Rule 68 offer of judgment. *See* 579 F. Supp. 2d 697 (D. Md. 2008), *aff'd* 419 F. App'x 381 (2d Cir. 2011) (per curiam) (unpublished). The award of attorneys' fees in *Feldman* was based on the declaratory judgment entered by the Court—a result not achieved by Plaintiff in this case. *See Feldman v. Pro Football, Inc.*, 806 F. Supp. 2d 845, 848 (D. Md. 2011) (indicating that "a declaratory judgment vindicating their rights under the ADA" was "the primary relief [the plaintiffs] sought").

Likewise, Plaintiff's citation to *Wilkes v. Wyoming Department of Employment Division of Labor Standards*, 314 F.3d 501 (10th Cir. 2002), does not affect the Court's determination. In *Wilkes*, the Tenth Circuit determined that a Title VII lawsuit was claim precluded by the plaintiff's acceptance of a Rule 68 offer of judgment in a prior 42 U.S.C. § 1983 lawsuit because the Title VII claims could have been included in the earlier suit. *See* 314 F.3d at 505-06. *Wilkes* says nothing about the recoverability of attorneys' fees by a prevailing party after the acceptance of a Rule 68 offer of judgment, and the fact that claim preclusion might apply in a future action between Plaintiff and the House does not bear on the degree to which Plaintiff obtained the remedies he sought in this case.[4]

---

[4] The Court has also considered those factors enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), in considering whether an

### III. Conclusion

IT IS THEREFORE ORDERED that Plaintiff Johnny Reininger, Jr.'s Motion for Reasonable Attorneys' Fees and Costs [Doc. No. 98] is GRANTED IN PART and DENIED IN PART as stated herein. Plaintiff is awarded attorneys' fees in the amount of $50,065.63 and costs in the amount of $1,059.12.

IT IS SO ORDERED this 9th day of August, 2019.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

enhancement or reduction of the lodestar amount is proper, despite the limitation of such factors to "ad hoc adjustments of the lodestar." *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1103 (10th Cir. 2010) (recognizing the U.S. Supreme Court's "significant[] marginaliz[ation]" of the *Johnson* factors in *Perdue*). Each of the *Johnson* factors is either already subsumed in the Court's lodestar analysis, addressed herein, or not relevant to the Court's determination of what amount of attorneys' fees should be awarded in this case. The Court does not find the damages awarded to Plaintiff to be nominal, so the Court has not engaged in the analysis required for determining the amount of attorneys' fees to award based on a plaintiff's receipt of only nominal damages as identified in *Brandau v. Kansas*, 168 F.3d 1179 (10th Cir. 1999).